IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.                                                                  Civil Action No. 4:24-cr-27

TIMOTHY JOSEPH SULLIVAN,

    Defendant.

### MEMORANDUM OPINION

This matter is before the Court on Defendant Sullivan's Motion to Dismiss Count Five of the Indictment, charging him with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). ECF No. 24. Sullivan's Motion challenges whether § 922(g)(1) is constitutional, both facially and as applied to him, in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

For the reasons stated below, the Court finds that § 922(g)(1) is constitutional, both facially and as applied, and DENIES Sullivan's Motion.

### I. BACKGROUND

Sullivan was charged in a five-count Indictment with Possession with Intent to Distribute 500 Grams or More of Cocaine; Possession with Intent to Distribute Oxycodone; Possession with Intent to Distribute Marijuana; Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and Felon in Possession of a Firearm. Indictment, ECF No. 6. Sullivan moved to dismiss the Felon in Possession of a Firearm charge. Mot., ECF No. 24. The Government responded in opposition, and Defendant replied. Resp. Opp'n, ECF No. 27; Reply, ECF No. 28. The Court has determined that the issues are adequately presented in the briefs, and a hearing is not necessary. E.D. Va. Local Crim. R. 47(J).

## II. STANDARD OF REVIEW

An indictment may be dismissed if the statute on which the indictment rests is unconstitutional. *United States v. Hill*, 700 F. App'x 235, 236–37 (4th Cir. 2017) (quoting *United States v. Engle*, 676 F.3d 405, 425 (4th Cir. 2012)); Fed. R. Crim. P. 12(b)(3)(B).

Sullivan asserts that § 922(g)(1) is unconstitutional, both facially and as applied to him. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). When asserting an as-applied challenge, the defendant must demonstrate that the statute is unconstitutional as it relates to his specific conduct only; the defendant "cannot 'obtain relief based on arguments that a differently situated person might present' or based on 'other situations not before the [c]ourt.'" *United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012) (first quoting *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010) (en banc); and then *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)).

## III. DISCUSSION

### A. *Bruen*'s Impact on the Second Amendment

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court struck down the District of Columbia's handgun ban as unconstitutional under the Second Amendment. 554 U.S. 570, 636 (2008). In doing so, the Court held, for the first time, that the Second Amendment protected the civilian possession of guns within the home. *Id.* at 625–26; *id.* at 639–40 (Stevens, J., dissenting). Although the *Heller* opinion relied on the text and history of the Second Amendment in its analysis,

the opinion did not expressly endorse a new test for lower courts to use when assessing the constitutionality of gun regulations.[1]

Post-*Heller*, circuit courts, including the United States Court of Appeals for the Fourth Circuit, coalesced around a two-step approach for assessing whether a statute violated the Second Amendment. *See United States v. Chester*, 628 F.3d 673, 679–80 (4th Cir. 2010); *United States v. Riley*, 635 F. Supp. 3d 411, 420 n.5 (E.D. Va. 2022) (collecting cases). Under this test, the court first determined "whether the conduct at issue was understood to be within the scope of the [Second Amendment] at the time of ratification." *Chester*, 628 F.3d at 680. If so, the court then applied sliding-scale, means-end scrutiny where the burden imposed on the right was weighed against the government's interest. *Id.* at 682–83 (explaining that intermediate or strict scrutiny was appropriate depending on whether the challenged conduct is at the "core" of the Second Amendment).

The Supreme Court in *Bruen* altered this framework. The Court determined that while the circuit courts' first step was consistent with *Heller*, the second step—applying means-end scrutiny—was inconsistent. *Bruen*, 597 U.S. at 19, 22 ("Whether it came to defining the character of the right[,] . . . suggesting the outer limits of the right, or assessing the constitutionality of a particular regulation, *Heller* relied on text and history. It did not invoke any means-end test such as strict or intermediate scrutiny."). The Court clarified that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. Once this is established, it is the government's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. In conducting this inquiry, courts are directed to search for

---

[1] Two years after *Heller*, the Supreme Court in *McDonald v. Chicago* incorporated the Second Amendment against the states. 561 U.S. 742, 791 (2010). Like *Heller*, *McDonald* did not endorse a test for assessing the constitutionality of gun regulations.

3

analogous regulations at the time of the founding to assess "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26. In its recent decision in *United States v. Rahimi*, the Supreme Court reinforced this approach. 144 S. Ct. 1889, 1897–98 (2024).

It is against this backdrop that Sullivan challenges § 922(g)(1).

**B. Sullivan's Challenges to § 922(g)(1)**

Section 922(g)(1) states, in relevant part, that "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).

<u>1. Facial Challenge to § 922(g)(1)</u>

Sullivan asserts that § 922(g)(1) is facially unconstitutional. This argument is foreclosed by the Fourth Circuit's decision in *United States v. Canada*, which held that § 922(g)(1) is facially constitutional. 103 F.4th 257, 258–59 (4th Cir. 2024); *see also United States v. Craig*, No. 22-4302, 2024 WL 3465644, at *1 (4th Cir. July 18, 2024); *cf. Rahimi*, 144 S. Ct. at 1898 (finding § 922(g)(8) facially constitutional). The Court is bound by this precedent.[2] Accordingly, Sullivan's facial challenge to § 922(g)(1) fails.

<u>2. As-Applied Challenge to § 922(g)(1)</u>

Sullivan also argues that § 922(g)(1) is unconstitutional as it applies to him. Sullivan's as-applied challenge largely mirrors his facial challenge, contending that § 922(g)(1) is unconstitutional as applied to him because he was born in Michigan and is therefore one of "the

---

[2] Defendant did not address the impact of *Canada* on his constitutional challenge in his briefing. *See* Reply.

4

people" protected by the Second Amendment and because § 922(g)(1) is inconsistent with the Nation's historical tradition of firearm regulation. Mot. at 17–18; Reply at 1–14.

The Government contends that the Court is bound by the Fourth Circuit's rulings in *United States v. Moore*, 666 F.3d 313 (4th Cir. 2012), and *United States v. Pruess*, 703 F.3d 242 (4th Cir. 2012), which upheld the constitutionality of § 922(g)(1) both facially and as applied. Resp. Opp'n at 24–27, ECF No. 27. Sullivan disagrees, arguing that, by overturning the means-end balancing approach used by the Fourth Circuit, *Bruen* undermined previous Fourth Circuit rulings including *Moore* and *Pruess*. Reply at 18–20. The Court agrees that *Moore* and *Pruess* are still binding precedent post-*Bruen*.

In the period between *Heller* and *Bruen*, the Fourth Circuit upheld the constitutionality of § 922(g)(1) on two occasions. *See Moore*, 666 F.3d at 317, 320; *Pruess*, 703 F.3d at 247. In both cases, the Fourth Circuit—instead of using the means-end balancing test—cited to language in *Heller* which stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" and that such prohibitions are "presumptively lawful." *Heller*, 554 U.S. at 626–27, 627 n.26; *see Moore*, 666 F.3d at 317–18; *Pruess*, 703 F.3d at 245–46. With this focus, *Moore* and *Pruess* found that the defendants in those cases "failed to rebut the presumption of lawfulness by showing [that their] conduct was that of a 'law-abiding responsible citizen.'" *Pruess*, 703 F.3d at 246 (quoting *Moore*, 666 F.3d at 319).

Although *Bruen* rejected the means-end balancing test, the opinion did not undermine the presumptive lawfulness of firearm restrictions for felons. The Supreme Court's analysis in *Bruen* centered around how the rights of the Second Amendment applied to "law-abiding" citizens. *Bruen*, 597 U.S. at 29, 31, 39, 60, 70. Further, the Supreme Court limited its conclusion to the licensing regime before it and "d[id] not undertake an exhaustive historical analysis . . . of the full

5

scope of the Second Amendment." *Riley*, 635 F. Supp. 3d at 422 (alterations original) (quoting *Bruen*, 597 U.S. at 31). Thus, it "le[ft] the 'presumptive lawfulness' of felon[] in possession statutes undisturbed." *Id.* (citing *Bruen*, 597 U.S. at 31). The concurrences and the dissent in *Bruen*, as well as the Supreme Court's recent decision in *Rahimi*, confirm this understanding. *See Bruen*, 597 U.S. at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." (quoting *Heller*, 554 U.S. at 626–27, 627 n.26)); *id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) ("I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding [asserting the presumptive validity of felon firearm restrictions]."); *Rahimi*, 144 S.Ct. at 1902 (reiterating *Heller*'s statement "that many . . . prohibitions [on firearm possession in the home], like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful'" (citation omitted)).

Because the Fourth Circuit's analysis in *Moore* and *Pruess* relied on the presumptive lawfulness of felon-disarmament laws, *Bruen* did not call into question their holdings. This Court is bound by that precedent. *See, e.g.*, *Riley*, 635 F. Supp. 3d at 422–24; *United States v. Lane*, 689 F. Supp. 3d 232, 240–42 (E.D. Va. 2023); *United States v. Hill*, -- F. Supp. 3d --, No. 3:23-cr-114, 2023 WL 8238164, at *7–8 (E.D. Va. Nov. 28, 2023); *United States v. Fowler*, No. 1:23-cr-165, 2024 WL 197601, at *2–5 (E.D. Va. Jan. 18, 2024).

Sullivan's as-applied challenge is controlled by *Moore*. In that case, the Fourth Circuit rejected an as-applied challenge to § 922(g)(1), holding that the defendant's "extensive and violent criminal history" placed him "plainly outside the scope of the Second Amendment." *Moore*, 666

F.3d at 320. The court observed that the defendant fell outside "the category of citizens to which the *Heller* court ascribed . . . Second Amendment protection," specifically "law-abiding[,] responsible citizens."[3] *Id.* (emphasis omitted) (quoting *Heller*, 554 U.S. at 635). Among the defendant's prior convictions were three prior felony convictions for common law robbery and two prior convictions for assault with a deadly weapon. *Id.* at 319–20. The *Moore* court concluded that while the Supreme Court had yet to define "'law-abiding responsible citizen' for Second Amendment purposes, [the defendant] surely would not fall within that group." *Id.* at 319.

Like the defendant in *Moore*, Sullivan "is far from a law-abiding, responsible citizen." *See id.* at 320. Most notably, Sullivan has prior convictions for armed bank robbery, aggravated assault with intent to rob, possession of a firearm or knife during commission or attempt to commit certain felonies, and interference with commerce by threats or violence. Pretrial Servs. Report at 4, ECF No. 17. Like the defendant in *Moore*, Sullivan's conduct falls outside of the scope of the Second Amendment. *See Moore*, 666 F.3d at 320.

This conclusion is reinforced by the Fourth Circuit's recent decision in *Canada* discussing "people who have been convicted of a drive-by-shooting, carjacking, *armed bank robbery*, or even assassinating the President of the United States." *Canada*, 103 F.4th at 258 (emphasis added). The Fourth Circuit concluded that "people who have been found guilty of such acts" may be constitutionally restricted from continuing to possess firearms. *Id.* at 258–59. That conclusion is reached regardless of "[w]hether the proper analysis focuses on the definition of the 'people,' the history of disarming those who threaten the public safety, *Heller*'s and *Bruen*'s assurances about

---

[3]  Sullivan argues that *Heller*'s "presumptively lawful" language is dicta that does not bind lower courts. Reply at 16 (citing *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395, 406 (4th Cir. 2005)). That argument misses the mark. This Court is bound by the Fourth Circuit's holdings in *Moore* and *Pruess*. Whatever weight the Fourth Circuit decided to give *Heller*'s "presumptively lawful" language is not for this Court to question.

'longstanding prohibitions,' or circuit precedent." *Id.* at 258–59. That Sullivan's prior felonies include armed bank robbery and several other violent felony convictions similar in nature to those articulated by the Fourth Circuit further supports the constitutionality of § 922(g)(1) as applied to Sullivan. Accordingly, Sullivan's as-applied challenge fails.

Finally, even if this Court concluded that *Moore* and *Pruess* were not binding, it would still find § 922(g)(1) constitutional as applied to Sullivan. The Court adopts the well-reasoned historical analysis in *United States v. Riley*, 635 F. Supp. 3d 411, 424–28 (E.D. Va. 2022). At step one of the *Bruen* analysis, the *Riley* court concluded that felons are not covered by the plain text of the Second Amendment. *Riley*, 635 F. Supp. 3d at 424–25; *see also, e.g.*, *Lane*, 689 F. Supp. 3d at 243; *Hill*, 2023 WL 8238164, at *10 (collecting cases). Nevertheless, even if they were, "felon in possession prohibition laws are consistent with the Founders' understanding of the Second Amendment at ratification" based on the "historical reason-by-analogy approach" at step two of *Bruen*. *Riley*, 635 F. Supp. 3d at 426–28; *see also, e.g.*, *United States v. Coleman*, -- F. Supp. 3d --, No. 3:22-cr-87, 2023 WL 6690935, at *11–15 (E.D. Va. Oct. 12, 2023) (finding that the United States has "a longstanding tradition . . . of disarming both violent and nonviolent felons").

Sullivan's as-applied challenge thus fails at both steps of *Bruen*. As a felon, he is not one of "the people" that the Second Amendment protects. Even if he were, § 922(g)(1) is constitutional as applied to Sullivan because of his prior convictions for multiple violent felonies. *See Canada*, 103 F.4th at 258–59; *cf. Rahimi*, 144 S.Ct. at 1896 ("Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms.").

## IV. CONCLUSION

For those reasons, Sullivan's Motion, ECF No. 24, is denied, as set out in the Court's accompanying Order, ECF No. 29.

/s/
Elizabeth W. Hanes
United States District Judge

Newport News, Virginia
Date: July 25, 2024